UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RODNEY CHARLES EILAND,

Plaintiff,

v.

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, et al.,

Defendants.

No. 2:18-cv-1042 MCE KJN P

FINDINGS AND RECOMMENDATIONS

I. Introduction

Plaintiff is a former jail inmate, proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis. The motion for summary judgment filed by defendants Walton, erroneously sued as "Walden," and Tam is before the court. As discussed below, defendants' motion should be granted.

II. Plaintiff's Allegations

In his amended complaint, plaintiff alleges that while housed at the Sacramento County Main Jail as a pretrial detainee, various defendants were deliberately indifferent to his serious medical needs by failing to ensure he received timely surgery to repair the near 100% Achilles tear plaintiff sustained to his left ankle and calf area, as well as to ensure adequate medical treatment for his severe pain thereafter.

The court ordered service of process on defendants Walden and Tam, and advised plaintiff that he must seek the identity of any Doe defendant through discovery. (ECF No. 16 at 2; see also ECF No. 8 at 5.)

III. Undisputed Facts[1] ("UDF")

1. Plaintiff is a former jail inmate and pretrial detainee, housed in the Sacramento County Jail from about February 19, 2016, through late July 2017. At all times relevant to this lawsuit, defendants Tam and Walton were Deputies employed at the Sacramento County Jail. (ECF No. 12 at 1-3.)

2. On or about May 5, 2016, plaintiff suffered an injury to his left leg that included a torn Achilles tendon. (ECF No. 12 at 2-5.)

3. Plaintiff's torn Achilles tendon caused him chronic, continuous pain. (Pl.'s Dep. at 61.)

4. In October of 2016,[2] plaintiff was moved from the Sacramento County Jail Medical Facility back to the 3 East Housing unit in the 200 pod, cell 205. (Pl.'s Dep. at 27; ECF No. 12 at 4.) Plaintiff was provided a cane, and a lower bunk and lower tier accommodation chrono. (ECF No. 12 at 4.)

5. During a cell check on October 23, 2016, while plaintiff was housed in 3 East cell 205, plaintiff complained to defendant Walton that plaintiff was suffering "severe pain and inflammation in [plaintiff's] left foot area." (Pl.'s Dep. at 39.)

6. The logbook notes that during a cell check on October 23, 2016, plaintiff complained to defendant Walton that plaintiff was suffering increased pain in his ankle/leg. (ECF No. 42-3 at 39.)

7. The logbook also notes that on October 23, 2016, about 1430, defendant Walton called the medical unit located on the second floor and relayed plaintiff's complaint: "pain in ankle." (ECF No. 42-3 at 39.)

---

[1] For purposes of summary judgment, the undersigned finds these facts are undisputed.

[2] In his deposition, it was suggested plaintiff may have been moved on October 14, 2016. In his amended complaint, plaintiff declares he was moved on or about October 16, 2016.

8. On October 23, 2016, defendants Walton and Tam were the two housing deputies on duty on 3 East. (ECF No. 42-3 at 29, 33.)

9. At his deposition, plaintiff testified that he spoke to defendant Walton again through the cell intercom, which allows him to speak directly to the custody officer. (Pl.'s Dep. at 41, 42.) Plaintiff testified that he told defendant Walton that plaintiff was "in severe pain" and "need[ed] medical assistance." (Pl.'s Dep. at 42.) Plaintiff could not recall what Walton said in response.

10. Plaintiff testified that he also spoke to defendant Tam later that day and complained that he was in pain and wanted medical attention. (Pl.'s Dep. at 44-45.)

11. Plaintiff testified that defendant Tam told plaintiff Tam would "check on the call," which plaintiff assumed meant Tam would check with medical to see the status of their call for plaintiff. (Pl.'s Dep. at 45.)

12. On October 23, 2016, around 1555 hours, medical staff advised that they would see plaintiff. The doors were opened for plaintiff by either defendant Walton or defendant Tam, and plaintiff walked with his cane to the elevator to access the medical unit located on the second floor. (Pl.'s Dep. at 65, 66; Tam Decl. ¶¶ 17-18; Walton Decl., ¶¶ 24-25; ECF No. 42-3 at 39.)

13. Plaintiff testified that about three hours elapsed between his first complaint to defendant Walton and when plaintiff was seen by medical staff. (Pl.'s Dep. at 43.)

14. Logbooks for the housing unit reflect an approximate hour and a half delay from when plaintiff first complained of pain and defendant Walton notified medical, to when plaintiff was seen by medical staff. (ECF No. 42-3 at 39.)

15. Plaintiff was assessed and given pain medication by Sharon Muthinja, R.N., who documented that her encounter with plaintiff took place at 1607, or 4:07 p.m. (ECF No. 42-3 at 46.)

16. RN Muthinja referred plaintiff's medical chart to a physician to determine whether to order a wheelchair for plaintiff to use to go to court. (ECF No. 42-3 at 46.)

17. RN Muthinja also facilitated a plan for plaintiff to have visits (attorney and social) on the 2 East housing unit. (ECF No. 42-3 at 46.)

18. Nursing staff determines whether, when, and where inmates are seen for medical care. (Tam Decl., ¶ 21; Walton Decl., ¶ 24.)

19. Plaintiff was not present during defendant Walton's call to medical; plaintiff was not present at medical to witness what medical staff were doing at the time requests for plaintiff's medical care took place. (Pl.'s Dep. at 52:9-12.)

20. At the time plaintiff filed his amended complaint, plaintiff was a prisoner at the Golden State Modified Community Correctional Facility in McFarland, California. (ECF No. 22-1 at 1.)

IV. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment

[3] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at

255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By notice filed December 4, 2019 (ECF No. 42), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

V. The Civil Rights Act

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

VI. Legal Standard for Eighth Amendment Claim

Deliberate indifference to a serious medical need violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See McGuckin, 974 F.2d at 1059.

Where, as here, the inmate is a pretrial detainee rather than a convicted prisoner, the inmate's rights derive from the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishments Clause. See Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). In other words, deliberate indifference to a pretrial detainee's serious medical needs violates the Fourteenth Amendment's Due Process Clause. Although a deliberate indifference test applies to a pretrial detainee's claim, it is an objective deliberate indifference test, rather than the subjective deliberate indifference test applicable to a prisoner's claim. See Gordon v. County of Orange, 888 F.3d 1118, 1122 & n.4 (9th Cir. 2018). The claim is evaluated under an objective deliberate indifference standard.

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1125. With regard to the third element, the defendant's conduct must be objectively unreasonable -- "a test that will necessarily turn[ ] on the facts and circumstances of each particular care." Id. (citations and internal quotation marks omitted).

////

"Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006.) (internal quotation marks omitted). The four-part test articulated in Gordon requires the inmate to prove more than negligence, but less than subjective intent --something akin to reckless disregard. Gordon, 888 F.3d at 1125.

VII. Discussion

Defendants have moved for summary judgment and met their initial burden to show no genuine dispute as to any material fact exists. See Celotex Corp., 477 U.S. at 323. Specifically, defendants adduced evidence, including their own declarations and copies of the logbooks from the relevant time frame, demonstrating that medical staff was timely-informed of plaintiff's pain complaint, and that defendants were not personally responsible for any delay in plaintiff being seen by medical staff. Rather, defendants adduced evidence that it is jail medical staff who determines whether or not an inmate is seen, as well as in what order the inmates are seen.

In opposition, plaintiff initially claims that defendants are not entitled to summary judgment because there are genuine issues of material facts to be resolved, asking "who is Lisa, described as 'from foot and ankle clinic at UC Davis, and SRN Nancy Gallagher," who told plaintiff "to find another provider," "is hearsay, where's the paper trial?" (ECF No. 44 at 1.) Later, plaintiff mentions Dr. Philip Henderson concerning whether plaintiff needed surgery, and Dr. James Drennan who recommended "no surgery." (ECF No. 44 at 2.) Plaintiff claims that physician's documents will demonstrate that allowing his Achilles injury to heal defectively for five months led to excruciating pain and injury requiring closer medical observation, and that the decision to move plaintiff to the general population where his ability to obtain medical care was reduced "does not relieve [defendants] Tam and Walton from duties deemed reasonable to 'serious medical needs.'" (ECF No. 44 at 2.) However, as argued by defendants, plaintiff cannot demonstrate a triable issue of fact as to defendants Tam or Walton by alleging other individuals acted, or failed to act, in response to plaintiff's serious medical needs. Rather, plaintiff must address the specific acts or omissions of defendants Tam and Walton.

////

In addition, plaintiff identifies five "facts" he claims are disputed:

1. "Whether or not Officer Tam verbally acknowledge[s] plaintiff's serious medical needs stating, 'I thought you were going to have to crawl to medical.'!" (ECF No. 44 at 2.) In his pleading, plaintiff declares that Tam made this statement upon plaintiff's return from medical. But for purposes of summary judgment, it is not disputed that plaintiff's torn Achilles tendon constitutes a serious medical need. Thus, plaintiff fails to demonstrate how Tam's statement constitutes a material dispute of fact precluding summary judgment.

To the extent plaintiff contends Tam's statement demonstrates Tam should have assisted plaintiff to medical, either by personally accompanying plaintiff or providing a wheelchair (ECF No. 12 at 5), plaintiff adduces no evidence demonstrating he required a wheelchair while housed at the jail. Rather, plaintiff was transferred from medical to the 3 East Housing unit with a cane, not a wheelchair. About a week later, plaintiff complained of pain to defendant Walton. Plaintiff used his cane to ambulate to medical, which appears to have taken a little over ten minutes. RN Muthinja noted plaintiff "walked with a cane and slow gait," and ordered plaintiff's chart be reviewed by a doctor to authorize the use of a wheelchair for court. (ECF No. 42-3 at 43.) RN Muthinja did not order a wheelchair for plaintiff's return to his cell "because he appeared able to use [a] cane and there were no stairs for him to climb." (ECF No. 42-3 at 44.) Plaintiff submitted no evidence in rebuttal.

2. "Whether or not [plaintiff] was medical[ly] cleared to be housed outside of serious medical observation. (Allegedly moved for overcrowding.)" (ECF No. 44 at 2.) However, to the extent plaintiff complains that he should not have been removed from medical and housed in the 3 East Housing Unit on October 14 or 16, 2016, plaintiff alleges no facts and submits no evidence demonstrating that either defendant Tam or Walton were involved in such housing decision.

3. Plaintiff objects that unidentified "hardships" have prevented him from obtaining the full names of witnesses. (ECF No. 44 at 3.) But plaintiff fails to demonstrate how any potential witness testimony would provide a material dispute of fact precluding summary judgment as to

////

////

defendants Tam and Walton.[4]

  4. Plaintiff complains that he is "missing complete medical files, reports, notes, written recommendations that may conflict with SRN's hearsay." (ECF No. 44 at 3.) Plaintiff does not identify the statements of "SRN" that he believes constitute hearsay. But plaintiff fails to demonstrate how such missing records or any hearsay statement would preclude summary judgment as to defendants Tam or Walton.

  5. "Medical expert opinion of 5 month internal where injury was passed off to another provider and improperly attended to resulting in an Achilles 'defect' requiring higher risk surgery." (ECF No. 44 at 3.) However, plaintiff utterly fails to connect this statement with either defendant Tam or Walton, both of whom are custody staff, not involved in medical care.

  Further, plaintiff contends that the parties' arguments are "squarely contradictory as to timeliness, physician opinion, statements made, level of reasonable concern for serious medical needs, and professional decision to re-house plaintiff into general population." (ECF No. 44 at 3.) However, such broad statement is devoid of specific facts or evidence rebutting the evidence adduced by defendants Tam and Walton.

  In his opposition, plaintiff also objects that there are 17 pages missing from the health services report between exhibits 6, 7, and 8, defendants' deposition exhibits jump from May 2016 to October 2016, and claims defendants "piec[ed] pages cunningly avoiding facts that prove plaintiff's case." (ECF No. 44 at 3.) However, defendants are only required to provide documents that support their motion or rebut plaintiff's opposition. As plaintiff was informed, if plaintiff had evidence refuting defendants' evidence, plaintiff was required to identify and produce such evidence in his opposition. Rand, 154 F.3d at 952; Fed. R. Civ. P. 56.

---

[4] Plaintiff claims he described such "hardships" in his motion for appointment of counsel, and asks the court to "re-visit" such motion "for quick and accurate fact checking and resolution to this case." (ECF No. 44 at 3.) In his verified motion for appointment of counsel, plaintiff refers to a "systemic deficiency" that contributed to his injury, continued pain and suffering; that plaintiff is unable to return to his former trade position as a journeyman electrician; and that "[e]xtensive cross-examination and presentation of complex conflicting evidence . . . will be required." (ECF No. 39 at 1-2.) But this motion provides no facts or evidence rebutting the evidence adduced by defendants Tam and Walton.

Finally, plaintiff provides 25 pages of exhibits, but fails to explain their significance or relevance. (ECF No. 44 at 5-30.) Many of the exhibits are dated 2017 and 2018; none of them are dated 2016. (Id.) The undersigned is unable to ascertain the relevance of such exhibits to plaintiff's claims against defendants Tam or Walton.

The undersigned finds that plaintiff failed to meet his burden on summary judgment because he has not tendered competent evidence to support his contention that defendant Tam or Walton delayed or interfered with plaintiff's ability to be seen by medical staff on October 23, 2016. Rather, plaintiff generally claims he did not receive timely medical care once he complained to defendant Walton that plaintiff was suffering pain. But plaintiff offers no competent evidence rebutting defendants' evidence that medical was promptly called, or that it was up to medical staff to decide when plaintiff would be seen by medical staff.

Moreover, as to delay, taking as true plaintiff's deposition testimony that he had to wait about three hours for medical care,[5] in addition to failing to demonstrate either defendant caused the delay, plaintiff adduced no evidence demonstrating that such delay caused plaintiff serious harm. See Hodges v. Corizon Health, Inc., 2019 WL 7476444, at *17-18 (D. Or. Sept. 10, 2019) (granting the defendants' motion for summary judgment based on finding that the defendants' failure to provide individual in custody with medication for a few days did not meet "the level necessary to establish reckless disregard or deliberate indifference"); Self v. Warden, MCC, 2018 WL 4502370, at *6 (S.D. Cal. Sept. 19, 2018) (dismissing inadequate medical care claims based on holding that two-day delay in providing pain medication to individual in custody was not objectively unreasonable).

On this record, no reasonable jury could find that the responses by defendants Tam or Walton were constitutionally inadequate, and therefore they are entitled to summary judgment.

////

[5] Documentary evidence shows that defendant Walton notified medical at 1430 (2:30 p.m.), and at 1555 (3:55 p.m.), medical staff authorized defendants Walton or Tam to release plaintiff to go to medical. RN Muthinja declares that she treated plaintiff before the 4:07 p.m. time written on her report, but using the 4:07 p.m. time as plaintiff's treatment time, the documents reflect that plaintiff waited an hour and thirty-seven minutes for treatment on Sunday, October 23, 2016.

VIII. Qualified Immunity

The undersigned finds that plaintiff has not established an Eighth Amendment violation, and therefore need not address the issue of qualified immunity.

IX. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The motion for summary judgment (ECF No. 42) filed by defendants Tam and Walden be granted;

2. Defendants Tam and Walden be dismissed from this action; and

3. This action be remanded to the undersigned for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **twenty-one** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 3, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/eila1042.msj